UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                              Case No. 15-20652

vs.

                              HON. GEORGE CARAM STEEH

DEVON PATTERSON (D-10),

        Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANT
## DEVON PATTERSON'S MOTION TO SUPPRESS [DOC. 603]

This matter is before the court on defendant Devon Patterson's motion to suppress due to a warrantless arrest and search of his residence. The court held an evidentiary hearing and heard testimony from Detective Keven Allen on September 7, 2017. For the reasons stated in this order, defendant's motion to suppress is DENIED.

I.    Facts

On December 17, 2010, West Virginia Detective Justin Hackney of the Metropolitan Drug Enforcement Network Team (MDENT), learned from a confidential informant that Nicole Elizabeth Reed and an individual later identified as Robert Bellamy were conducting unlawful narcotics transactions. On December 22, Detective Hackney interviewed Reed. She

- 1 -

admitted to using heroin and was detained for mental hygiene after becoming violent. While admitting her to a mental hygiene unit, officers found narcotics and $1,909 concealed in Reed's bra. On January 3, 2011, Hackney received an arrest warrant for Reed for violating West Virginia Code Section 60A-4-401 (possession with intent to deliver a controlled substance).

On January 9, 2011, Detectives Hackney and Keven Allen, also a member of MDENT, received information from a confidential informant that Reed was living with Robert Bellamy at the residence and that they had recently returned from Detroit with narcotics to sell. The next day, the detectives observed Bellamy's vehicle outside the residence. The car matched the description and registration provided by the confidential informant, who had stated that he had seen Reed driving the car. Hackney further verified with Reed's mother that Reed lived at the residence. Detectives Hackney, Allen, Ryan Higginbotham and other officers went to the residence to execute the arrest warrant.

Detective Allen knocked on the door. He heard footsteps inside the house walking toward the door, but nobody opened it. Allen turned the knob, which was unlocked, and announced "police." Bellamy opened the door and Allen observed the bedroom door slam shut. Allen and

Higginbotham went to the bedroom to pursue Reed, and found her and defendant Patterson laying on a bed. Allen informed Reed she was under arrest. Higginbotham noticed a pistol laying in plain view on the floor next to the bed. He cleared the weapon for safety and put it back where he found it.

Meanwhile, Detective Hackney was clearing the living room area, where he observed two plastic bags of Opana pills (a Schedule II controlled substance) in plain view on the coffee table. There were several small quantities of Opana pills on the table separated into equal numbers, as well as more plastic bags with Opana pills on the floor in plain view next to the coffee table. Later, law enforcement would determine there were 168 pills. All three individuals denied that the pills belonged to them, that they were staying at the apartment, or that they were on the lease.

The police arrested Bellamy and Reed for possession with intent to deliver narcotics. They took pictures of and seized the narcotics. Several detectives secured the residence by remaining outside, while other detectives returned to the station to process the arrestees and acquire a search warrant for the apartment. While the residence was secured, Detective Tagayun, also from MDENT, was approached by an individual who informed him she had come to purchase Opana pills from the two men

inside the residence. The individual indicated she had intended to purchase $400 work of pills at $30 each.

When the search warrant was issued, Detective Allen and others executed the search of the residence. They recovered $3,190 from a pair of defendant's pants, the 9mm pistol from beside the bed, 120 additional Opana pills from a deodorant bottle found on the coffee table, and various paper documents and electronics.

II. Analysis

A. Standing

When a defendant is arrested at the home of a third party, he does not have a legitimate expectation of privacy in the premises and therefore cannot challenge the search. *United States v. Buckner*, 717 F.2d 297, 299 (6th Cir. 1983). However, a defendant does have a reasonable expectation of privacy if he is an overnight guest at another residence. *Minnesota v. Olson*, 495 U.S. 91, 93 (1990).

When the sole purpose of the presence in a location is to package narcotics, courts have held there is no expectation of privacy. *United States v. Pollard*, 215 F.3d 643 (6th Cir. 2000) (citation omitted). In determining whether to extend Fourth Amendment protection to the party challenging the search, courts should examine the nature of the individual's

ties to the residence. *United States v. Harris*, 255 F.3d 288 (6th Cir. 2001) (citation omitted).

The burden of showing a reasonable expectation of privacy . . . rests with the defendant." *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980). During narcotics transactions, incidental social interaction between a resident and an individual who is using the location to distribute narcotics has been held not to extend the reasonable expectation of privacy to the non-resident. *United States v. Gray*, 491 F.3d 138, 152 (4th Cir. 2007). In this case, the defendant may have been engaged socially with Reed, but there is evidence that the defendant used the residence to distribute narcotics. This is supported by the fact that the buyer who came to the location to purchase narcotics said she was buying the pills from the males at the location. Moreover, the amount of money recovered from defendant's pants, the Opana pills in plain view separated into equal piles for distribution, as well as the firearm recovered from beside the bed where he was lying, supports a conclusion that defendant's primary use of the residence was to distribute narcotics. Further, defendant denied being on the lease or living at the apartment.

The court finds that defendant does not have standing to challenge the search under the Fourth Amendment. However, the court did hear

evidence and argument on the merits of defendant's suppression motion and will analyze the issues raised in that motion.

### B. Law Enforcement Lawfully Entered the Residence

The officers entered the residence with an arrest warrant for Reed. They had reason to believe she lived at that location based on information previously provided by the confidential informant, the presence of Bellamy's car in the driveway, and confirmation received from Reed's mother. They also reasonably believed that Reed would be at the apartment at the time of the arrest because (1) the confidential informant's information that Reed and Bellamy recently returned from Detroit, (2) Bellamy's car was in the driveway, (3) the confidential informant told law enforcement he had seen Reed driving Bellamy's car, and (4) police identified Bellamy when he opened the door and they observed someone else slam the bedroom door shut. *See Payton v. New York*, 445 U.S. 573, 602-03 (1980).

The officers had reason to enter the apartment's bedroom in pursuit of who they believed to be Reed in order to arrest her. *See Shreve v. Jessamine County Fiscal Ct.*, 453 F.3d 681, 683 (6th Cir. 2006).

### C. Law Enforcement Properly Seized Contraband in Plain View

The plain view doctrine permits an officer to seize contraband in plain view where (1) the officer is lawfully in the place where the evidence can be

seen; (2) the officer has lawful access to the evidence; (3) the evidence is in plain view; and (4) its incriminating character is "immediately apparent." *United States v. Mathis*, 738 F.3d 719, 732 (6th Cir. 2013).

The officers entered Reed's apartment to execute an arrest warrant and viewed narcotics in the living room area upon entering the home. They were lawfully in the place where the evidence could be seen and had lawful access to it. The narcotics' incriminating character was immediately apparent. The detectives did not need to manipulate the bags or pills to determine their illegality. The firearm was also in plain view, but the officers waited to retrieve it after first obtaining a search warrant. The officers were lawfully in the bedroom and the firearm was in plain sight. The incriminating character of the gun was immediately apparent since the officers were investigating narcotics transactions and had uncovered a large amount of narcotics in the home. There was probable cause to believe the gun was related to drug trafficking.

D. <u>Law Enforcement had Probable Cause to Arrest Defendant</u>

The officers found narcotics in the apartment's common area. All three people present in the apartment denied that the narcotics belonged to them, denied that they were staying at the residence, and denied that they were on the lease. An objectively reasonable officer would have a

reasonable ground for believing, under the totality of circumstances, that the defendant had actual or constructive possession of the narcotics. *See Maryland v. Pringle*, 540 U.S. 366, 371-72 (2003).

III. Conclusion

For the reasons stated in this opinion and order, as well as on the record, defendant's motion to suppress is DENIED.

Dated: October 3, 2017

> s/George Caram Steeh
> GEORGE CARAM STEEH
> UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on October 3, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---